UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| CITY OF BEAUFORT; et al., )<br>)<br>)<br>        Plaintiffs, )<br>)<br> v. )<br>)<br>NATIONAL MARINE FISHERIES SERVICE; et al., )<br>)<br>)<br>        Defendants. )<br>)<br>_____)<br>SOUTH CAROLINA COASTAL )<br>CONSERVATION LEAGUE; et al., )<br>)<br>        Plaintiffs, )<br>)<br> v. )<br>)<br>WILBER ROSS, in his official capacity as secretary of commerce; et al., )<br>)<br>        Defendants. )<br>)<br>_____) | No. 2:18-cv-03326-RMG<br>(Consolidated with 2:18-cv-03327-RMG)<br><br>**RESPONSE TO MOTION TO INTERVENE** |

   Plaintiffs City of Beaufort, City of Charleston, City of Folly Beach, City of Isle of Palms, City of North Myrtle Beach, Town of Bluffton, Town of Briarcliffe Acres, Town of Edisto Beach, Town of Hilton Head Island, Town of James Island, Town of Kiawah Island, Town of Mount Pleasant, Town of Pawleys Island, Town of Port Royal, Town of Seabrook Island, and Town of Awendaw (collectively "Municipalities"), and South Carolina Small Business Chamber of

1

Commerce ("Chamber") hereby respond in opposition to the Motion to Intervene (2:18-cv-03327-RMG, DE#9) with respect to the American Petroleum Institute ("API").

The Municipalities and the Chamber object only to the admission to API as an intervenor,[1] on the basis that API does not meet the criteria for intervention pursuant to Rule 24 of the Federal Rules of Civil Procedure. Rule 24 "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Rule 1, FRCP.

API does not qualify for intervention because it does not have a practical interest that will not be adequately represented by other parties. A proposed intervenor of right must have a "practical" relationship between their claimed interest and the subject of the action. Rule 24(a)(2), FRCP. In this case, the Incidental Harassment Authorizations for seismic airgun surveying, issued by defendants to five individual companies, are the subject of the action.

API lobbies for the oil industry, spending between five and ten million dollars per year over the past decade to promote their interests.[2] API's lobbying efforts include producing "reports" that reflect unrealistic and falsely inflated figures for how offshore oil drilling would impact the

---

[1] The individual companies who hold the authorizations at issue in this lawsuit meet the qualifications for intervention of right pursuant to Federal Rule of Civil Procedure 24(a). The association to which they belong representing the broader interests of similar companies likely meets the qualifications for intervention as well. Thus, this response is narrowly tailored to address only the intervention of API, which does not meet the requirements of Rule 24.

[2] "American Petroleum Institute," Center for Responsive Politics (Oct. 24, 2018), *available at* https://www.opensecrets.org/lobby/clientsum.php?id=D000031493&year=2018.

2

economy. For example, the 2013 Quest report[3] projects figures for revenue and job growth for states along the Atlantic Ocean based upon multiple false assumptions, including the following:

- Doubling BOEM's reserve estimates for the amount of oil available in the Atlantic OCS region;

- Projecting the drilling of 690 wells in over the course of sixteen years, which would be faster than peak production in the Gulf;

- Projecting values of $100/bbl oil and $7/mcf natural gas, when the current prices are merely $50/bbl and $3/mcf;

- Projecting 35,000 jobs will come to South Carolinians based upon: 1) most rig workers and technical jobs going to local people, when in fact most of those jobs will require highly

---

[3] The Economic Benefits of Increasing U.S. Access to Offshore Oil and Natural Gas Resources in the Atlantic, Quest Offshore Resources, December 2013, at 48-49, *available at* https://www.api.org/~/media/Files/Oil-and-Natural-Gas/Exploration/Offshore/Atlantic-OCS/Executive-Summary-Economic-Benefits-of-Increasing-US-Access-to-Atlantic-Offshore-Resources.pdf (hereinafter Quest Report).

    trained and experienced workers from out of state,[4] and 2) the addition of 11,000 direct oil worker jobs with 24,000 indirect jobs that are without any foundation whatsoever;[5]

- Claiming that there will be billions of dollars of revenue sharing for South Carolina when there is zero revenue sharing for the Atlantic Region; and

- Generally claiming that offshore oil drilling would be an economic boost for the state of South Carolina when even the most heavily inflated projections are a minuscule fraction of coastal tourism revenue that would be jeopardized by offshore drilling.[6]

API's lobbying tactics, including misrepresenting the economic impact of offshore drilling, will add no value to this case and will only serve to complicate an already complex proceeding, in contravention with Rule 1.

---

[4]Perplexingly, the Quest Report itself recognizes that most jobs will not be local hires in the same report where it projects employment growth based upon such local hires. *See* Quest Report at 44 (recognizing that by 2023, 58% of jobs will come from outside the Atlantic Coastal states). BOEM has also recognized that most jobs related to offshore drilling will not be local. See, e.g., 2017–2022 OCS Oil and Gas Leasing Draft Proposed Program at 156 ("The pattern of employment supporting OCS activities in the Atlantic…may result in low immediate local economic benefits for nearby communities. A large proportion of workers during the exploration and development phases are likely to be sourced from other places. . . .")

[5]The Quest Report actually only lists a total of 9,400 indirect jobs and provides no explanation as to where the other 14,600 indirect jobs would come from. Quest Report, at 48-49.

[6]Munson, McLaren, Stickler, Offshore Drilling vs. Tourism: Projected Revenue for South Carolina, Sept. 7, 2015, *available at* http://www.drilldownsc.com/tvo.

Furthermore, API's membership and interests lie primarily with offshore oil and gas drilling. API asserts, through the Motion to Intervene, that the seismic airgun "surveys will provide important information about **whether** . . . oil and gas resources **may exist** . . . which, in turn, will better inform any **future decisions** regarding the management of the Atlantic OCS oil and gas resources." (2:18-cv-03327-RMG, DE #9, at 9.) This type of interest is highly speculative, tenuous and impractical. API's interests will only actuate if there are surveys, if those surveys yield information that is useful to its members, and that information ultimately leads to a decision about whether to drill offshore for oil and gas. API's promotion of offshore drilling for oil and gas would only serve to distract this Court from the issue of whether the government defendants met the requirements to issue seismic airgun surveying authorizations, which is squarely before it.

Surely, the individual companies, which have a direct interest in the authorizations for seismic airgun surveys as the applicants for them, have, not only a more practical and concrete interest in this case, but are also in the position to adequately defend those authorizations without the distraction of API. Additionally, the existing defendants who granted those authorizations are also in a position to adequately defend them without intervention by API.

For all of these reasons, Plaintiffs Municipalities and Chamber respectfully request that this Court deny the Motion to Intervene, in part, to prevent API from becoming a party. In the alternative, we would ask the Court to prevent API from using its unreliable lobbying materials, such as the Quest and Calash reports, during the course of these proceedings.

    s/Amelia Thompson
Amy E. Armstrong (ID # 9625)
Amelia Thompson (ID # 12640)
SOUTH CAROLINA ENVIRONMENTAL LAW
    PROJECT

| | |
|---|---|
| Mailing address: | Post Office Box 1380 |
| | Pawleys Island, SC 29585 |
| Office address: | 430 Highmarket Street |
| | Georgetown, SC 29440 |
| Telephone | (843) 527-0078 |
| FAX | (843) 527-0540 |

Attorneys for the Plaintiffs

Georgetown, South Carolina
January 4, 2019